**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISON**

UNITED STATES OF AMERICA,    )
    )
v.    )
    )    Case No. 6:24-cr-00074-JSS-EJK
JEREMY CHARLES DEWITTE    )
    )
    Defendant.    )
_____)

## United States' Sentencing Memorandum

Defendant Jeremy DeWitte was indicted in March of 2024 on two counts of filing false tax returns, in violation of 26 U.S.C. § 7206(1), for failing to report most of the revenue he earned from his funeral-procession escort business. From 2016-2018, he omitted from his tax returns more than $475,000 in gross receipts, causing a tax loss over $100,000. DeWitte pled guilty to both counts in the indictment without a plea agreement.

With an extensive criminal history, DeWitte's Sentencing Guidelines range is 41 – 51 months' incarceration. The United States requests the Court to impose a 51-month sentence because it is necessary to protect the public from DeWitte's repeated criminal activity and to deter him and others from lying on their tax returns. The United States further urges the Court to order DeWitte's sentence to run consecutively to the sentence that the Osceola County Circuit Court recently imposed on him for an unrelated crime. Finally, the United States requests the

Court to order DeWitte to pay $69,461 in restitution as a condition of his supervised release.

DeWitte's tax fraud is only the latest in a long series of state and federal crimes that he has committed over the past 25 years, crimes that reveal his willful and repetitive contempt for the rules of civilized society. Like filing false tax returns, most of DeWitte's prior convictions have involved deceiving the public or lying to the government. These include: nine convictions for impersonating a police officer; using a fake name to obtain a driver's license; and using a fake driver's license to obtain a U.S. passport. DeWitte's other convictions include a sex offense and four other convictions, starting in 2018 and continuing through October of this year, for failing to comply with Florida's sex-offender registration laws. The Court should take his criminal history fully into account when fashioning a sentence.

## FACTS

DeWitte was indicted on March 27, 2024, for two counts of filing false tax returns, in violation of 26 U.S.C. § 7206(1), for 2017 and 2018. On September 25, 2024, DeWitte appeared before Magistrate Judge Kidd and pleaded guilty to both counts of his indictment without a plea agreement (despite being offered one). On October 15, 2024, the Court accepted DeWitte's guilty plea and adjudicated him guilty.

The facts underlying DeWitte's tax crimes are straightforward: he lied about his business's revenue on his 2017 and 2018 federal individual income-tax returns.  And, as the PSR properly counts as relevant conduct, he lied on his 2016 tax return as well.  But those aren't the only lies DeWitte had told in this case. He also lied to the IRS agents who were investigating him, he lied to the Court, and he lied to the Probation Officer. A recap of DeWitte's lies follows, starting with the tax returns.

## I.    DeWitte's Lies on His Tax Returns

Since at least 2016, DeWitte has been the sole owner of Metro State Special Services, a funeral-procession escort business. *See* Presentence Investigation Report (D. 62, "PSR") at ¶¶ 7 - 8. As the sole owner, DeWitte was required to report Metro State's revenue and expenses on a Schedule C to his tax return.  But for three consecutive years, 2016 through 2018, DeWitte filed federal income tax returns, Forms 1040, that understated Metro State's gross income  *See id.* Table 1 below compares Metro State's actual income with what DeWitte reported:

**Table 1.    Reported vs. actual income - 2016 – 2018 (rounded)**

| Year | Reported income ($) | Actual income($) |
|------|---------------------|------------------|
| 2016 | 11,000 | 145,000 |
| 2017 | 19,000 | 174,000 |
| 2018 | 17,000 | 205,000 |
| Total: | 47,000 | 524,000 |

*See id.*

Naturally, DeWitte's lies about Metro State's income resulted in his underreporting his tax liability for 2016 – 2018 by over $100,000.  Said another way, through his lies DeWitte lined his pockets with more than $100,000 that belonged to the United States. Table 2 below shows the tax loss:

**Table 2.    Tax loss - 2016 - 2018**

| Year | (Refund) or Tax Due Per Return | Corrected Tax Due | Additional Tax Due |
|------|-------------------------------|-------------------|--------------------|
| 2016 | ($129) | $39,280 | $39,409 |
| 2017 | ($1,556) | $35,889 | $37,445 |
| 2018 | $0 | $32,016 | $32,016 |
| | | **TOTAL** | **$108,870** |

*See id.* ¶ 13.

## II.    DeWitte's Lies to IRS Agents

DeWitte also lied to IRS agents when they questioned him about his tax returns. When asked how he calculated and reported Metro State's income on his tax returns, DeWitte told the case agents that he saved copies of the checks that he received from customers and that he reported all his income *See id.* ¶ 9. This, we now know from the investigation which matched client payments and bank account deposits, alongside DeWitte's guilty plea, was false.

And DeWitte told other lies to the IRS agents as well:

- ***He lied about his clients:*** DeWitte told the agents that in 2017 Metro State had only two clients. *See id.* ¶ 11. In fact, Metro State had 40 clients that year. *See id.*

- ***He lied about his profits***: DeWitte told the agents that in 2017 Metro State incurred a net loss. *See id.* But Metro State was profitable that year: even allowing for expenses that DeWitte didn't claim, Metro State's 2017 net profit was over $117,000. *See id.*

- ***He lied about his workers***: DeWitte told the agents that in 2017 Metro State had only two independent contractors. *See id.* But in fact, DeWitte had over 25 people working for him at Metro State that year. *See id.*

### III.    DeWitte's Lies to the Court

DeWitte also lied to the Court about his failure to appear at his re-scheduled initial-appearance hearing, which had initially been set by a summons (D.3). On April 2, 2024, the Court issued a notice rescheduling that hearing to 11:00 a.m. on April 10, 2024. *See* D. 12. DeWitte failed to appear. *See* D. 13. He told his attorney that he had car problems, and the attorney relayed that to the Court. *See PSR* ¶ 15. The Court then rescheduled the hearing to the next day, April 11, at 8:30 a.m. *See* D.14. DeWitte failed to appear for that as well. *See* PSR ¶ 15.  Although he told his counsel that he had been arrested that morning, that was false. *See id.*  The Court then issued a bench warrant. *See* D. 19, D. 20.

Based on his objections to the PSR, DeWitte still maintains that he couldn't attend the April 11 hearing because he was under arrest. Those allegations to the Court are dubious, insofar as records from the Osceola County Sheriff's Office report that DeWitte was not under arrest at the time of the hearing (8:30 a.m.); rather, he was arrested that evening, when he turned himself in to the Sheriff's Office. *See id.*

The Sheriff's Office reports are attached as Exhibits 1 and 2 to this memorandum.  The call report indicates that DeWitte called that office at 6:08 p.m.—more than nine hours after his scheduled the initial appearance.  *See* Ex. 1, Osceola County Sheriff's Office Call Detail Report. The arrest report states that

DeWitte was arrested on April 11 at 7:34 p.m.  *See* Exhibit 2, Osceola County Uniform Charging Affidavit. Thus, the sheriff's arrest records show that DeWitte was not under arrest at the time of his rescheduled initial-appearance hearing.

### IV.    DeWitte's Lie to the Probation Officer

In his interview with Probation , DeWitte reported  that he earned a bachelor's degree from the University of Florida. *See id.* ¶ 78. Unsurprisingly, the University of Florida has no record of his attendance. *See id.*

### GUIDELINES CALCULATIONS

The United States agrees with the final PSR calculations:

| | | |
|---|---|---|
| Tax loss to federal government (including tax loss for offense of conviction) | $108,870 | PSR ¶ 13 |
| Base Offense Level | 16 | PSR ¶ 19 |
| Adjustment for obstruction of justice. USSG § 3C1.1. | 2 | PSR ¶ 23 |
| Adjustment for acceptance of responsibility | (3) | PSR ¶¶ 26, 27 |
| Total Offense Level | 15 | PSR ¶ 28 |
| Criminal History score | 29 | PSR ¶ 48 |
| Criminal History Category | VI | PSR ¶ 48 |
| Guidelines imprisonment range | 41 to 51 months | PSR ¶ 99 |

DeWitte objects to the obstruction-of-justice enhancement. However, without a doubt that enhancement applies to these facts, and the Court should overrule the objection.  Section 3C.1.1 of the Sentencing Guidelines provides, in pertinent part—

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.  The Application notes to this section explain that a willful failure to appear at a hearing falls within this section:

> 4.    Examples of Covered Conduct.—The following is a non-exhaustive list of examples of the types of conduct to which this adjustment applies:
>
> * * *
> (E)    escaping or attempting to escape from custody before trial or sentencing; **or willfully failing to appear, as ordered, for a judicial proceeding**.

*Id.*, Application Note 4 (emphasis added).

As the PSR recognizes, this enhancement applies to DeWitte because he willfully failed to appear at his arraignment hearing. The rationale behind this enhancement is that defendants like DeWitte who commit crimes and then make

unlawful attempts to avoid answering for them are more threatening to society and less deserving of leniency than defendants who don't defy the criminal-justice process. *See United States v. Dunnigan*, 507 U.S. 87, 97 (1993); *United States v. Emery*, 991 F.2d 907 (1st Cir.1993). Numerous courts, including the Eleventh Circuit, have thus held that the enhancement under USSC § 3C.1.1 is appropriate when a defendant willfully fails to appear for his arraignment. *See United States v. Ortiz*, 194 F. App'x 895, 896 (11th Cir. 2006) (unpublished); *United States v. Teta*, 918 F.2d 1329, 1334 (7th Cir. 1990); *see also Balbuena v. United States*, 2011 WL 6025656, at *12 (S.D. Fla. 2011) (applying the § 3C.1.1 enhancement for defendant's failure to appear at his change-of-plea hearing). The Court should therefore apply it to DeWitte as well.

## SENTENCING RECOMMENDATION

The United States recommends that the Court impose a 51-month prison sentence, followed by a one-year term of supervised release. This sentence is sufficient, but not greater than necessary to comply with the purposes of sentencing. 18 U.S.C. section 3553. The government further requests that the Court condition DeWitte's supervised release on DeWitte's paying restitution to the United States in the amount of $69,461, which is the tax loss pertaining to the counts of conviction.

In determining an appropriate sentence, 18 U.S.C. § 3553(a) instructs courts to consider, among other things, the following factors:

- The nature of the offense and defendant's personal history; *see* 18 U.S.C. § 3553(a)(1);
- The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; *see id.* § 3553(a)(2)(A);
- The need to afford adequate deterrence to criminal conduct; *see id.* § 3553(a)(2)(B);
- The need to protect the public from further crimes of the defendant; *see id.* § 3553(a)(2)(C); and
- The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; *see id.* § 3553(a)(6).

For the reasons set out below, consideration of the above § 3553 factors all counsel in favor of a Guidelines sentence in this case.

## I.    The Nature of the Offense and the Defendant's Personal History

DeWitte's tax fraud was greed-driven and repeated. His business took in income of more than $500,000 from 2016 to 2018, yet he reported only $47,000 of that income—**less than 10% of the actual amount**. *See* PSR ¶ 8. DeWitte's fraudulent reporting allowed him to line his pockets with more than $100,000 in untaxed cash. *See* PSR ¶ 13.

10

There are no mitigating circumstances underlying his conduct or in his background. DeWitte earned a substantial income, and nevertheless chose repeatedly and consistently to lie on his tax returns. And then he lied to the IRS special agents when they caught him.  In other words, DeWitte has no excuse for his conduct: it was pure greed.

Given DeWitte's personal history, it is no surprise that he would cheat on his taxes.  His lies to the IRS and this Court are in keeping with his repeated criminal conduct.  He has no excuse for this either.  His background is enviable in its lack of remarkability.  DeWitte described his childhood as "great." PSR ¶¶ 65, 66. He reported that there were no instances of domestic abuse, violence, or substance abuse in his household.  Indeed,  all of his basic needs were provided for. *See id.*

Yet his criminal history is vast and varied, with 16 felony convictions starting in 1998, when he was 18 years old, and continuing through just a few months ago, when he was convicted for failing to comply with Florida law governing convicted sex offenders. *See* PSR ¶¶ 31 – 47.  Moreover, DeWitte is awaiting trials and sentencing on many more felonies.  On January 6, 2025, he is scheduled to plead guilty in an insurance-fraud felony case (Ninth Judicial Circuit, Orange County, Case No. 2023-CR-000843), and on January 22, he is scheduled to begin trial on two more felony sex-offender registration cases

(Ninth Judicial Circuit, Osceola County Case Nos. 2024-CF-000469 and 2024-CF-000990).

There are no mitigating circumstances. Indeed, it is quite the opposite—DeWitte's personal history weighs heavily in favor of a Guidelines prison sentence.

## II.    Protecting the Public

The Sentencing Guidelines call for longer sentences for defendants with extensive criminal histories for good reason: longer sentences protect the public from recidivists.

> A defendant's record of past criminal conduct is directly relevant to [the purposes of sentencing]. A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. . . . **To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered.** Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation.

U.S.S.G. Chapter 4, introductory comment (emphasis added).

DeWitte's criminal history shows him to be a committed recidivist. He has 16 felony convictions since 1998, placing him within the highest criminal-history category, Category VI. *See* PSR ¶¶ 31 – 47.  Many of those convictions involve crimes of deceiving the public (nine convictions for impersonating a law-enforcement officer) or lying to the government (lying to the State of Florida on a

driver's-license application and lying to the United States on a passport application).  His lie to this Court about his failure to appear for his arraignment is consistent with these prior convictions: he is someone who thinks that he is above the law and can lie his way around it to suit his interests.

Apart from the 16 prison sentences he has already received—with sentences of eight days (one sentence), one year (four sentences) 18 months (six sentences), and four years (one sentence)—DeWitte has also been jailed on multiple occasions for violating probation or the terms of his supervised release. *See id.*  DeWitte's criminal-history score of 29 reveals him as someone for whom prior prison sentences have had no effect on his willingness to commit more crimes. The only way to stop DeWitte from committing crimes is to incarcerate him.  The need to protect the public thus calls for a Guidelines sentence that fully takes DeWitte's criminal history into account.

### III.    Seriousness, Just Punishment, and Deterrence

Tax crimes are serious offenses. *See* U.S.S.G. 2T1.1. cmnt. 7. The United States' tax system is based on voluntary compliance, and individual taxpayers are trusted to honestly report their income and assess their taxes and pay over what they owe to the government. Yet the system of voluntary compliance is often abused, and federal resources are such that not all tax crimes can be prosecuted. For these reasons, deterrence, through sentencing, is of paramount

importance. *See* USSG §2T1.1, intro. cmt. Honest taxpayers need to know that they are not dupes for following the law. And they need to know that those who cheat will be punished for their crimes.

The Eleventh Circuit has repeatedly endorsed this principle, setting aside sentences in which the imprisonment was inadequate to promote deterrence. "Defendants in white collar [cases] often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006); *see also United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014) ("[D]eterrence is an important factor in white-collar cases, where the motivation is greed. . . . [W]e have set aside sentences of little or no imprisonment because they do not constitute just punishment for the offense, do not promote respect for the law, and will not do much to deter similar criminal activity by others."). And indeed, "[s]tudies have shown that salient examples of tax-enforcement actions against specific taxpayers, especially those that involve criminal sanctions, have a significant and positive deterrent effect." Joshua D. Blank, In Defense of Individual Tax Privacy, 61 Emory L.J. 265, 321 (2011).

A sentence lacking a significant prison term would entirely fail to serve the goal of general deterrence. A lenient sentence  would encourage tax cheating and send a message that tax fraud will be tolerated and that those who engage in it

will not be held accountable. Such a sentence would provide a would-be tax cheat every incentive to perpetrate a tax fraud scheme, where the reward is high and the chance of being caught and prosecuted is low. The United States respectfully submits that this is not the message that this Court should send to the public through its sentence of DeWitte. The need for general deterrence, as called for in 18 U.S.C. § 3553(a)(2)(B), demands more.

## IV.    Sentencing Disparities

As the Supreme Court has observed, one of the chief aims of the Sentencing Guidelines, even in their advisory role, is to promote uniformity and avoid unwarranted disparities in sentencing. *See United States v. Booker*, 543 U.S. 220, 264-65 (2005). Here, a Guidelines sentence will promote those goals.

According to the most recently published data from the United States Sentencing Commission, 63.6% of the individuals sentenced for tax-fraud in fiscal year 2023 received a prison sentence. *See* United States Sentencing Commission, Quick Facts, Tax Fraud at 1 (Aug. 2024) (available at https://www.ussc.gov/research/quick-facts/tax-fraud). And unlike DeWittte, more than 86% of those defendants had little or no criminal history (Criminal History Category I). *See id.* The median tax loss was approximately $360,000, and the average prison sentence was 16 months. S*ee id.*

15

While a Guidelines sentence for DeWitte would exceed the average prison sentence for tax-fraud cases, this is largely due his criminal history. The average tax cheat does not have a prolific criminal history.  In contrast, DeWitte is a serial criminal.  Because of his criminal record, the guideline calculation appropriately categorizes him in Category VI—accordingly, his sentence calculation is longer. Had DeWitte been in Category I, like most tax-fraud offenders, and were he not to receive an obstruction-of-justice enhancement, his Offense Level would be 13, and the Guidelines sentence would obviously be less.  The Guidelines calculation appropriately considers DeWitte's fulsome criminal history, and the sentencing guideline range reflects the sentence appropriate for a serial criminal with dozens of prior sentencing events. Thus, there is no disparity between DeWitte's Guidelines sentence and the national average of tax offenders at the highest criminal history category of VI.  His Guidelines sentence is the product of his serial criminal conduct.

### V.    DeWitte's Sentence Should Run Consecutive to the Sentence Recently Imposed by Osceola County.

On November 1, 2024, DeWitte was sentenced by the Osceola County Circuit Court to 83 months in prison for failing to comply with Florida's sex-offender registration law (the "Osceola County Sentence"). *See* PSR at 47. The

Court should order that its sentence for DeWitte's tax fraud shall run

consecutively to the Osceola County Sentence.

As the Eleventh Circuit has recognized, federal courts are authorized to

impose a federal sentence that is consecutive to a state sentence. *See United States*

*v. Adair*, 826 F.2d 1040, 1041 (11th Cir.1987). Because DeWitte's tax-fraud and

sex-offender failure-to-register convictions are wholly unrelated, the Guidelines

permit the Court to impose a sentence that is consecutive, concurrent, or partially

concurrent "to achieve a reasonable punishment for the instant offense." U.S.S.G.

§ 5G1.3(d).[1] (The result would be otherwise if DeWitte's state-court sentence

were for an offense that was "related conduct" to the instant offense. *See id.* §

5G1.3(b) and (c) (requiring a concurrent sentence)). The advisory notes to

§ 5G1.3(d) instruct courts to consider the following factors in cases where a

defendant is already serving a sentence for an unrelated crime:

> (i)    the factors set forth in 18 U.S.C. § 3584 (referencing
> 18 U.S.C. § 3553(a));

---

[1] This section provides, in pertinent part:

> (Policy Statement) In any other case involving an
> undischarged term of imprisonment, the sentence for
> the instant offense may be imposed to run concurrently,
> partially concurrently, or consecutively to the prior
> undischarged term of imprisonment to achieve a
> reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3(d).

> (ii)   the type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;
>
> (iii)   the time served on the undischarged sentence and the time likely to be served before release;
>
> (iv)   the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and
>
> (v)   any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

U.S.S.C. § 5G1.3, Application note 4.

Here, the above factors warrant a sentence that will run consecutively to the Osceola County Sentence.  As set out above, the § 3553 factors counsel strongly in favor of a substantial prison sentence. And while Florida does not allow parole for people convicted after 1983, *see* Fla. Stat. § 947.16(6), inmates can obtain early release after serving at least 85% of their sentence. *See id.* § 944.275(f). At most, DeWitte is two months into his 83-month Osceola County Sentence, but his past experience with prison sentences has shown that those sentences do not deter him from committing future crimes.  That fact counsels in favor of a consecutive sentence here: the surest and only way to deter DeWitte from committing more crimes, and to protect the public from him, is to incarcerate him.

The Eleventh Circuit has repeatedly recognized that the Sentencing Guidelines reflect a preference for consecutive sentences when imprisonment terms are imposed at different times. *See United States v. Ballard*, 6 F.3d 1502, 1506 (11th Cir. 1993); *United States v. Lewis*, 626 F. App'x 896, 899 (11th Cir. 2015); *United States v. Williams*, 592 F. App'x 828, 830 (11th Cir. 2014). And it has repeatedly affirmed district courts that ordered consecutive sentences when the federal offense was unrelated to pending or anticipated state-court sentence. *See*—

- *United States v. Gomez*, 955 F.3d 1250, 1254–55 (11th Cir. 2020) (affirming 46-month sentence for illegal reentry and 21-month sentences for violation of supervised release, with each was to run consecutively with an 8-year state sentence for sexual battery where district court had noted its grave concern about deterring the defendant and protecting the public from him);

- *United States v. Lavariega-Juarez*, 768 F. App'x 978, 981–82 (11th Cir. 2019) (affirming 24-month sentence for illegal reentry that was to run consecutive to an undischarged 18-month state sentence for fleeing or eluding a law-enforcement officer; noting that the state and federal sentences addressed different societal harms);

- *United States v. Lewis*, 626 F. App'x 896, 897 (11th Cir. 2015) (affirming a 60-month sentence for felon in possession of a firearm that was to run consecutive to any sentence that might be imposed in a pending state-court criminal case against the defendant);

- *United States v. Watts*, 633 F. App'x 767, 770 (11th Cir. 2015)
  (affirming 24-month sentence for felon in possession of ammunition
  that was to run consecutive to a 15-year state sentence for receiving
  stolen property); and

- *United States v. Williams*, 592 F. App'x 828, 830 (11th Cir. 2014)
  (affirming 120-month sentence for possession of child pornography
  that was to run consecutive to an undischarged 120-month sentence
  for a drug offence that itself was running concurrently with a sex-
  offender failure-to-register sentence).

Were the Court to order that DeWitte's tax-fraud sentence run
concurrently with the Osceola County Sentence, the result would be the same as
if the Court were to impose no prison sentence at all. Not only would that send
the wrong message to DeWitte and the community, it would also waste the
substantial resources that the United States has expended in investigating and
prosecuting DeWitte for his tax fraud. The message a concurrent sentence would
send to the public is that tax crimes are not serious, and that courts are reluctant
to imprison those convicted of those crimes.  But the right message that needs to
be sent by this Court is that if you cheat on your taxes, you will face prison.

## VI.    The Court has authority to condition DeWitte's supervised release on his paying restitution.

The Court should impose restitution in the amount of $69,461 as a
condition of supervised release. Suggested language for such a restitution order

is attached as Exhibit 3. The combination of 18 U.S.C. § 3663 and 18 U.S.C. § 3663A, when read together, allows district courts to order restitution for Title 26 offenses as a condition of supervised release.  Section 3583(d) of Title 18 authorizes district courts to impose, as a condition of supervised release, "any condition set forth as a discretionary condition of probation in section 3563(b)." Section 3563(b), in turn, authorizes a district court to order a defendant to "make restitution to a victim of the offense under section 3556."  18 U.S.C. § 3563 (b)(2). Section 3556 then authorizes a district court to "order restitution in accordance with section 3663," which provides that a court "may order . . . that the defendant make restitution to any victim of such offense."  18 U.S.C. § 3663(a)(1)(A). And though § 3663 by its own terms limits restitution to certain (non tax) offenses, § 3563(b)(2) expressly provides that § 3663's limitation in scope does not apply to restitution as a condition of probation (or, accordingly, as a condition of supervised release). See 18 U.S.C. 3563(b)(2).  Multiple circuit courts have recognized this.  *See United States v. Perry*, 714 F.3d 570, 577 (8th Cir. 2013); *United States v. Frith*, 461 F.3d 914, 919-20 (7th Cir. 2006) (discussing Title 15 offenses); *United States v. Butler*, 297 F.3d 505, 518 (6th Cir. 2002).

A court's authority to order restitution for Title 26 offenses as a condition of probation or supervised release is also explicitly recognized in the Sentencing

Guidelines. *See* USSG § 5E1.1(a)(2); *Gall v. United States*, 21 F.3d 107, 109-10 (6th Cir. 1994).

Here, the United States is the victim, and its loss for the two counts of conviction is $69,461. *See* Part I, above, Table 2.0 (showing additional tax due for years 2017 and 2018). DeWitte owes the taxes on the income he earned. Justice mandates restitution here, and the Court should therefore exercise its power to condition DeWitte's supervised release on his paying restitution to the United Staes.

## CONCLUSION

DeWitte's tax fraud cannot be reduced to an oversight, a mistake that spiraled out of control, or a single instance of lying. He lied on three consecutive tax returns, and lied some more when the IRS caught him. He then lied to this Court about his failure to appear at the initial-appearance hearing, attempting to delay his reckoning, and lied again to the Probation Officer.

This Court should protect the public and deter DeWitte, and others, by imposing a serious prison sentence here.

The United States respectfully requests, therefore, that the Court impose a Guidelines sentence and sentence DeWitte to prison for 51 months, followed by a one-year period of supervised release, with such release conditioned on DeWitte's paying restitution to the United States in the amount of $69,461 — the

tax loss pertaining to the counts of conviction.  The United States further requests

that the Court order that DeWitte's prison sentence run consecutive to the state

sentence  imposed on November 1, 2024, by the Osceola County Circuit Court.


Dated: December 30, 2024                    Respectfully submitted,

                                            Roger B. Handberg
                                            UNITED STATES ATTORNEY

                                            /s/ Curtis J. Weidler
                                            Curtis J. Weidler
                                            Trial Attorney
                                            U.S. Dept. of Justice, Tax Division
                                            Southern Criminal Enforcement
                                            Section
                                            150 M. St., NE
                                            Washington, DC 20002
                                            (202) 307-1436
                                            Curtis.j.weidler@usdoj.gov

                                            David Zisserson
                                            Asst. Chief, Southern Criminal
                                            Enforcement Section
                                            U.S. Dept. of Justice, Tax Division,
                                            150 M. St., NE
                                            Washington, DC 20002
                                            (202) 514-6479
                                            David.zisserson@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on the 30th day of December, 2024, I filed this document using the Court's CM/ECF system, which automatically notifies all counsel of record of the filing.

/s/ Curtis J. Weidler
Curtis J. Weidler
Trial Attorney
U.S. Dept. of Justice, Tax Division
150 M. St., NE
Washington, DC 20002
(202) 307-1436
Curtis.j.weidler@usdoj.gov
